And we'll hear first from Mr. Brooks. May it please the Court, I'm Brian Brooks, here on behalf of the plaintiff. It's a pleasure to be here again, especially in new Law Clerk Orientation Court Week. Brings back fond memories. This case reminds me of why I became an appellate lawyer so I didn't have to fool with discovery. The case is about a tractor-trailer wreck that hit the back of our late client's automobile as he was driving down the freeway. But the merits of that case are obviously not at issue. The question before the Court, as I know you're aware from reading the briefs, is whether the District Court overreached in granting a discovery sanction that dismissed the plaintiff's case. My position today, set forth in the briefs, is that while discovery got off track, I'm not going to over-egg the pudding. Discovery got off track and there were things that needed to be done. Dismissal was too much, and I'll try to explain that as quickly and briefly as I can. I will say, however, that given the ten minutes' time, I'm going to rely primarily on the brief and incorporate whatever I said there. If the Court has questions, I'll certainly address those. Well, I have a question. As I understood the thrust of your brief, it was if there's a less onerous sanction available to remedy the problem, the Court more or less is obliged to choose that over dismissal because dismissal is such an extreme sanction. But I'm concerned whether our circuit law supports that proposition, because we seem to have some cases that reject sort of a least onerous sanction rule. Is that your position, and do you think the law is open to that? Far be it from me to criticize the circuit consistency, but I understand your position. It's not a position, it's a question. I understand your question. Thank you. As I read the circuit cases as well, there seems to be some inconsistency in them on how far the District Court needs to go in considering the viability of lesser sanctions. What's your best case? The Heartland Bank case. You think that's the best case on looking hard at less onerous? You know, I've learned a long time ago not to say all, never, and always. I'm not going to say I've read every case on sanctions. I've read a pile of them. And as I work through the pile, I think we were appropriate to rely so hard on the Heartland case in our brief, because I think it speaks most directly to the point. That case was, I'm sorry, were you? Well, I was just going to say, didn't the District Court actually consider lesser sanctions and decided not to? No, not in the way that the Heartland opinion suggests to me that they need to be considered. The District Court said, I don't know of other sanctions that would be effective. I don't think so. Well, she said if I find that it is something less than willful and deliberate, I can provide other remedies such as requiring me to pay for new depositions by the defendants, et cetera. I mean, she clearly considered that. I'm glad you pointed that language out for two reasons. The first, let me answer your question, both questions directly. She stated, I don't think lesser sanctions will work. She did not tell us what lesser sanctions she considered, and she did not tell us why they would not work. She says such as requiring you to pay for new depositions by the defendants of your witnesses. That sounds pretty specific. But we didn't analyze why they won't work, and that was the only thing that was pointed out. The second thing that I want to point out, which I think is important from your mention of that particular language, is the way I read both the back and forth in the transcript and the opinion of the District Court. And I'm like you. I have the luxury of just looking at this on the cold record because I wasn't there and I wasn't embroiled in this dispute, so I can back off a little bit. I read the District Court as saying that if I find a willful violation, I must go to the strongest sanction. She comes preciously close to saying that. Because she said if I don't find willfulness, then I could use the other sanctions. The negative inference that I am making from the language that Judge Wright uses is that when I find the willfulness, then I need to go to the most extreme sanction. And I don't believe that is correct. That is not correct under Hartland and it's not correct under any of the others. No, but what she says, and so if I find there is a deliberate and willful avoidance of production, I can certainly dismiss the case and say I must. I guess what I'm getting to is that I understand the District Court's frustration in the discovery process, but I believe that when you look at the language that she used and the lack of any real analysis of what lesser sanctions may have been available to avoid a dismissal, that she didn't do what the opinions require her to do, particularly Hartland. And let me say this before I get lost and lose time to do it. As I went back through this record, if I had been a defendant and I had this material on the plaintiff, and I had been told in depositions, no, I'm perfectly healthy, and been told in depositions from family members that he's perfectly healthy, and then I got a barrage of medical information that said, no, he's not particularly especially healthy, and then I got other deposition information from the named plaintiff representative that some things that had been said by other family members and by Mr. Gumby were just not true, I got a real problem understanding how I'm prejudiced at all, because I now have a shotgun, a howitzer, and a bazooka for cross-examination. I think the district court did not adequately examine that particular point. I don't see where the prejudice, I frankly do not see where the prejudice is in this case, where at best for the plaintiff. What about the death of the original plaintiff? Is that prejudice that can't be addressed by other sanctions? How do you deal with that? No, I think there are a couple of ways to deal with it. The way I would want to deal with it if I were them and they're good lawyers, and I bet they've already thought of this, is I would want to have free leave to point out to the jury every inaccuracy that Mr. Gumby stated before the jury. In other words, since I can't cross-examine him since he's not there, I have to be able to come up with some method to point out that all of these statements in the deposition were untrue. Other than that, you can exclude everything that turned out to be incorrect, and there's no proof on it at all. Other than that, you can beat the experts up on cross-examination that this was just not correct. I think there are all kinds of ways to deal with those issues that he's not there. And frankly, I wonder which way it cuts that he's not with us anymore. Does it really help the plaintiff? I don't think so. I think it really helps the defendant more because he can't ever address his own misstatements. I'm running out of time, but let me say that I understand, again, the district court's frustration. I understand the position that she was in. But I think what we had here was a case that got filed fast. When medical records started rolling in, they beget more medical records, which beget more medical records, which beget more medical records, which was a supplies to counsel, and discovery got off track. It's a track that can be gotten back on without a dismissal. And I'd ask that it be reversed on that basis. Thank you. Thank you very much. We will next hear from Ms. Kinsella. Good morning, Your Honors. May it please the Court, my name is Ronna Kinsella. I'm here on behalf of Defendant UPS and Alan Howard in this case. I, along with my co-counsel, Robert Cox, we actually were the trial counsel in this case, so I have a firsthand perspective of exactly what went on. And I can tell Your Honors, and in response to both of Your Honors' questions earlier, this isn't a case about medical records. This isn't a case where the district court didn't consider other sanctions. This is a case where, from its very inception, every single aspect of this case had been tainted by lies, material misstatements, and deliberate and willful omissions from the party of the plaintiff and her counsel. I'll give you a few examples because I think this case dwells a little too much in generalities, and you're looking at an isolated transcript rather than the totality of the record that was facing both my counsel, our clients, and the court. Well, your brief, unfortunately, didn't address the appellant's brief when it said here are the sanctions that could be used and why that would be adequate. And I'll be happy to address that, Your Honor. That would have been helpful if you were worried about this. Yes, sir. Go ahead. The point in this case is that we did address those sanctions. In fact, I wrote a brief to the court outlining the additional potential sanctions that were available and discussing for each, and it's in the record that's before your honors. I encourage you to look at it. It's filed the same time as our motion to show cause and outlined all the numerous possibilities that were before the court. The problem in this case is that all along the way, the district court and ourselves had had difficulty with the plaintiff in complying with even the most basic aspect of the federal rules of civil procedure. I want to give you a few examples. Before we filed our motion to compel, our first motion to compel that the order is based off of that led to the ultimate dismissal in this case, at that point in time, just as an example, we had a document dump, one document dump of 10,300-plus pages, over 5,600 of which were duplicative documents. There had been at least three different instances in which the plaintiff's counsel had been reprimanded by the court for failure to comply with the federal rules of civil procedure and the local rules of the court in consulting with the defendants in scheduling depositions without notice, namely those of Mr. Gumby and of his primary treating physician. There had been admonitions by the court that she would not permit a trial by ambush when we had raised on previous occasions of the fact that we had not been properly, had our discovery responded to. There had been instances in which, in fact, we had agreed with plaintiff's counsel to extend the deadline to disclose her experts because she hadn't provided proper Rule 26 expert disclosures in this case. And the plaintiff deliberately and intentionally decided, I'm not going to abide by that deadline. I'm going to wait until the close of discovery to provide you with my discovery. That was all before the August 20th hearing. At the August 20th hearing, when our first motion to compel, the court went in length in the transcript. We included it in our portion of the record. And, again, I encourage your honors to look at it. In the pleadings that were filed before the court, the plaintiff repeatedly stated, I've given defendants everything I've got. As of the date of that hearing, we already had both parties in our possession at least 120-page document listing nothing but medical providers that plaintiff had given to us saying, these are my damages in this case. At that point in time, we already had 271 separate charges totaling over $50,000 worth of damages on 60 different pages of discovery. But at that point in time, we knew and plaintiff knew, because she labeled them as questionable, weren't actually related to this case and she presented them to us anyways. It was only when we went through the record and said, these aren't appropriate charges. You're sending us bills for KFC chicken, for your electronics. For your cable bill, for your eyeglass bill two years before this accident even happened. There's no way you think this is appropriate. And, in fact, if you look at the record and plaintiff's response to our motion for sanctions, she states that, quote, no reasonable attorney, no reasonable attorney would have ever believed that we intended to take this up at trial. So what's your point, that there was intentional misconduct? There was absolutely 100% intentional misconduct. I don't think that's disputed. The court went on at the August 20th hearing. What we asked for in our motion to compel was give the plaintiff any amount of time she asked for to produce all of the requested documents and materials, the expert disclosures, the medical records, the medical bills, the identities of the witnesses. At that point in time, after the August 20th hearing, we had another grand total of 9,300 pages of duplicative documents. Documents weren't requested until 10 days before the deadline and, in some instances, not even a month afterwards. They were never Bates number stamped. They were never put in accordance with what the rules require in terms of responding to requests for production. They intentionally withheld evidence in the form of the Silverado pickup truck, and the court addressed this at the August 20th hearing. You can't withhold evidence to use it as leverage in a case. There was instances in which they had another $200,000 plus in duplicative charges on their claim damages. After the August 20th hearing where the court says, go get these medical records and go produce these medical records, there was 19 different providers post-accident, 19, 11 of which the plaintiff submitted bills for that they didn't produce. There was 11 pre-accident providers that they didn't produce, all of which were on that 20-page document that we had when we filed our first motion to compel. After the motion to compel, there was another 200 plus documents that the court ordered the plaintiff to produce related to her expert disclosures that they never even asked for. They didn't even go to their expert witnesses and say, can you get us these documents? They knew before the August 20th hearing that we had requested testing. The plaintiff and her counsel deliberately and intentionally allowed the defendants to destroy that testing. Why? Not because she didn't know that the court ordered it, and she says this in her response to our motion to show cause. She says, Rule 26 didn't require me to produce it, so I thought my response was sufficient. She deliberately and intentionally ignored the orders of the court. Then she goes on, there was no fewer than 10 different witnesses that we deposed traveling from Houston, Texas all the way up to Boston, Massachusetts. She picked the witnesses that we got to depose. She picked the family members after consulting with them in advance. She did so in a manner to basically prep them for our depositions of them, knowing full well that the extent of this case was not a simple rear-end accident. We're dealing with an elderly gentleman who we had been told under oath by plaintiff's counsel, acting as a party essentially in this case and as an agent of the plaintiff, and both by the plaintiff herself and her deposition testimony, that he was in perfect health. He was able to travel all over the country. There was nothing wrong with this man. They repeatedly refused to respond and admit to requests for admissions that their own medical records contradicted. They actually assisted these plaintiffs in hiding and their witnesses in hiding relevant information and lying under oath. So when the district court finally got to all this stuff and we produced this, this was a result of a document dump that occurred two months after the close of the discovery deadline that the plaintiffs requested. They chose that deadline. We did not. Over 2,000 pages of that were duplicates, again, and buried within there, cleverly, they were in no order, they were not documented appropriately, were 88 pages of smoking gun documents. I do want, because my time is running out, I do want to address something that Mr. Brooks stated earlier. He talks about how he would have handled the case if it were him. Well, frankly, Your Honors, there's a reason why we protect an attorney's work product. There's a reason why we hold that in such high esteem, and there's a reason why we tell people that you can't just get that through discovery willy-nilly. It's because that's our work product. That's our theories of the case. We were faced with a position where we had to choose either to allow the plaintiff and her counsel to go forward and continue this misconduct. They had had continuances. They had instructions by the court that the court was going to strike their witnesses. They had warnings by the court that the court was going to actually possibly declare a mistrial if this ended up being a trial by ambush. They had warnings from the court that their experts may be excluded. So all of the potential realm of sanctions that Your Honors have discussed, the court had already warned the plaintiffs about, and they didn't care. They did it anyways. And she stood up and she told Her Honor, plaintiff's counsel did, that their responses were good enough, and we shouldn't care because they didn't intend to use it for their case at trial. That's not what discovery is about. That's not what the federal rules of civil procedure are about. We have discovery. We have rules for a reason. If it was any other party, if the roles were reversed and I represented the plaintiff today, I guarantee you we probably wouldn't be here because there wouldn't be a question. Do you have anything in the last 40 seconds to say about prejudice? I do. Your Honors, we have spent two years, hundreds of thousands of dollars, defending a case that never should have been brought in the first place. We have been lied to. The Eighth Circuit ruling says all I've got to show is that there was an order, that there was willful or intentional as opposed to accidental conduct on the part of a party to violate that order, and that there was prejudice. We've had to depose witnesses all over the country. We've got witnesses who are no longer available. We've got witnesses who we may not ever even be able to track down. We're still missing documents. We had to investigate the plaintiff's case for them, and I think that can't be stressed strongly enough. It's not my job to have to go back and prove that what the plaintiff is telling me is true. They owed me a duty to disclose that information, and they chose not to. They're now asking this court to let them have a do-over. If you do that, it's all downhill from there. And this court's prior cases, as referenced by Your Honor earlier, clearly states that if dismissal is within the realm of appropriate sanctions, which it clearly was in this case, that you won't substitute your interpretation of what an appropriate sanction was for that of the trial court. The trial court had her, evidence before her, some 2,200 pages of documents which couldn't possibly be summarized in a short order.  It certainly was convincing. It convinced her. And just as one final point, there's absolutely no case law anywhere that I have been able to find, despite rigorous searching, that at all supports the proposition that some non-party who had no standing to bring a lawsuit in the first place can now object. They haven't. And to this day, the plaintiff has never come forward with a single reasonable explanation for their failure and their basic complicity in this case in terms of being willful and disobedient at every order issued by this court. For that reason, Your Honor, I think the trial court was correct, and I think her order should be very much upheld. Thank you. Does Mr. Brooks have additional time? A minute and 44 seconds, Your Honor. Two things real fast. I still don't know why this case can't be tried tomorrow with defendants with every advantage and plaintiffs with every disadvantage because of the way the discovery has come out. The plain, simple fact is they got everything that they need to beat the plaintiff up pretty badly in this trial. The misstatements in the Pennsylvania depositions were made clear. The misstatements in Mr. Gumby's depositions was made clear. The misstatements were revealed by Ms. Comstock, and the medical records have come to light. They were eventually chased down by the plaintiff and presented. They should have been done quicker. The statements in some of the depositions should not have been made, but that all advantages the defendant. It does not advantage the plaintiff. So I don't see any prejudice at all. One last thing. Finally, at the last second, there got a reference to witnesses who cannot be located anymore or who may be missing. What about that? I don't know who those are. I see that vague reference. From reading this record, I have no clue who that may be. So far as I know, we know who all the witnesses are, and there aren't that many. This case is still not terribly old. I do want to make one last point about the non-party issue. We did make some mention of the fact that we have represented parties whose interests are pressed by the trustee. That's perfectly appropriate. The way the Arkansas wrongful death and survival statutes are put together, there are innocent people whose claims are being advanced by the trustee who didn't do anything in discovery, much less anything wrong, who are prejudiced by this, and the district court really didn't take that into consideration. I understand the frustration, again. I think this is a young attorney who got a little buried in the medical records and some things that needed to go on, but there's a lot that can be done to allow this case to go to trial rather than dismissal and discovery sanction. Thank you. Very well. The case has been well presented. We will take it under advisement and render a decision in due course, and we thank you both for your patience.